948 F.2d 1283
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Marvin SEIFE, Defendant-Appellant.
 No. 91-5759.
 United States Court of Appeals, Fourth Circuit.
 Argued Oct. 3, 1991.
Decided Nov. 18, 1991.
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore. John R. Hargrove, District Judge. (CR-90-246-HAR)
 Argued: Hamilton Phillips Fox, III, Sutherland, Asbill, & Brennan, Washington, D.C., for appellant; Geoffrey Robert Garinther, Assistant United States Attorney, Baltimore, Md., for appellee.
 On Brief: Richard D. Bennett, United States Attorney, Baltimore, Md., for appellee.
 D.Md.
 AFFIRMED.
 Before ERVIN, Chief Judge, SPROUSE, Circuit Judge, and ROBERT R. MERHIGE, Jr., Senior United States District Judge for the Eastern District of Virginia, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Marvin Seife was convicted on two counts of perjury in violation of 18 U.S.C. § 1621. On appeal, Seife challenges the district court's refusal to dismiss the indictment against him, claiming that such dismissal was appropriate either because the alleged perjurious statements were "literally true" or because the district court should have applied the "exculpatory no" doctrine. Seife also challenges various evidentiary rulings made at trial.
 
 
 2
 The basic facts are not in dispute. Dr. Marvin Seife, then Director of the Division of Generic Drugs of the Food and Drug Administration, was convicted of perjury in connection with a sworn statement he gave on October 25, 1989 to one James M. Ritz, an investigator with the FDA's Division of Ethics and Program Integrity. Mr. Ritz was conducting an investigation into alleged misconduct by FDA employees, specifically in relation to their accepting favors and meals from regulated industry.
 
 
 3
 In the course of his investigation, Ritz interviewed Seife concerning lunches he had with regulated industry representatives Milton Kaplan or K.C. Bae. Seife, in a sworn statement, said that he had never had lunch with Kaplan or Bae, and that he had not discussed FDA matters with either Kaplan or Bae outside of his government office. Seife also stated that "since 1980, I have made it a practice never to have meals with regulated industry ..." Once he had completed his statement, Seife was asked to review it and make any changes or additions he desired. Seife, after being sworn, signed the statement.
 
 
 4
 Seife was later indicted on two counts of perjury stemming from the October 1989 affidavit he had signed after being questioned by Ritz. The first count alleged that Seife had committed perjury by denying that he had ever had a meal with Kaplan or Bae, when in fact he had lunch with them on December 11, 1987. The second count alleged that Seife had committed perjury by his statement that it was his practice never to have meals with "regulated industry." The indictment alleged that Seife had participated in "numerous" such meals on "numerous" occasions during 1986, 1987, and 1988.
 
 
 5
 At trial, Seife maintained his innocence on both perjury counts charged in the indictment. Seife contended that he simply had failed to remember the lunch with Kaplan and Bae which had occurred almost two years before. With respect to the second count of the indictment, relating to his practice of having meals with members of regulated industries, Seife maintained that it was indeed his practice not to share meals with employees of regulated companies, and that he had varied from this practice on infrequent occasions.
 
 
 6
 Prior to trial, Seife moved to dismiss the indictment on the basis that it contradicted the "exculpatory no" doctrine. Courts have applied the exculpatory no doctrine to protect individuals who deny guilt in response to questioning from law enforcement authorities from false statement prosecutions brought pursuant to 18 U.S.C. § 1001. The philosophy supporting the doctrine is apparently that section 1001 was not intended to reach mere exculpatory denials of guilt, but instead to protect the government against false pecuniary claims and to protect government agencies from the perversion of their normal functioning.
 
 
 7
 The lower court declined to dismiss the indictment against Seife, finding that the exculpatory no doctrine was applicable only to violations of section 1001. Subjecting the lower court's decision to de novo review, we affirm. We decline to apply the exculpatory no doctrine, which we recently recognized in false statement prosecutions, United States v. Cogdell, 844 F.2d 179 (4th Cir.1988), to this section 1621 perjury action.
 
 
 8
 Seife also challenges the trial court's refusal to dismiss Count II of the indictment on the grounds that Seife's statement that he "made it a practice never to have meals with regulated industry" was literally true. The trial court ruled that whether Seife's statement was literally true was a matter for the jury. The evidence at trial showed that Seife did in fact have meals with industry representatives on at least 14 occasions, and a jury found him guilty of perjury for his statement.
 
 
 9
 Relying on United States v. Bronston, 409 U.S. 352 (1973), Seife maintains that as a matter of law the statement on which Count II was based is literally true and thus Count II should have been dismissed before being submitted to the jury. The facts before us are unlike the facts presented in the Bronston case, however. The Bronston Court found the statements of a defendant to be literally true where the defendant's answer to a question was not only unresponsive, but untrue solely by reason of a negative implication. In the instant case, the defendant's false statement was his own voluntary one, which was found by the jury to be untrue, and required no resort to implication in determining its truth or falsity. Consequently, we affirm the lower court's finding that whether or not Seife's statement was literally true was a matter properly submitted to the jury for consideration, and that, based on the evidence presented at trial, the jury could properly find that taken in context Seife's statement was not literally true.
 
 
 10
 Finally, Seife argues that the district court abused its discretion by its "continual and one-sided intervention in the trial," by its erroneous evidentiary rulings, and by allowing improper closing arguments by the prosecution. Upon a thorough review of the record and finding no reversible error, the opinion of the district court is
 
 
 11
 AFFIRMED.